# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARNELL A. DIXON, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. GJH-17-2390 |
| WARDEN RICHARD GRAHAM, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff brought this civil rights action against Defendant Warden Richard Graham. ECF No. 1. Pending before the Court is Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 19. The Court advised Plaintiff of his opportunity to oppose the motion, ECF No. 20, and Plaintiff sought and was granted extensions of time to do so. ECF Nos. 21, 22, 23, 24, 25, & 26. However, Plaintiff has failed to file an opposition. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6. For the following reasons, Defendant's motion, construed as a Motion for Summary Judgment, will be granted.

**I.  Background**

In his unverified Complaint, Plaintiff Larnell A. Dixon, a state inmate confined at the Western Correctional Institution (WCI) alleges that on May 30, 2017, Warden Graham ordered the windows in his housing unit, Housing Unit 4, to be sealed shut. ECF No. 1 at 2. Plaintiff remained housed in a cell with a sealed window until June 15, 2017 when he was moved to a cell with a window that opens. *Id.* at 3. As background, Plaintiff explains that the windows in housing unit 4 were sealed from 2013 until the second week of May 2017 when they were unsealed before an audit team came to inspect the prison. *Id*. Plaintiff states that from 2013 to

2017, many inmates complained about the sealing of the windows, but nothing was done. *Id*. Apparently after the audit, the windows were resealed. Plaintiff maintains that having the windows sealed is a fire and health hazard. *Id*. at 3.

Plaintiff claims that the guards grew tired of the inmates' complaints about the windows and on May 30, 2017, forced the inmates out of their cells and sprayed some of the inmates, though not Plaintiff, with mace and "pellets." ECF No. 1 at 3. Plaintiff claims he was affected by the fumes and requested medical treatment but his request was denied. *Id*.

Plaintiff admits that he did not file any administrative remedy procedures (ARPs) regarding these matters. *Id.* at 2. He claims that he failed to do so because the WCI handbook states that inmates cannot file ARPs about the Warden. *Id*.

On January 17, 2015, Plaintiff was transferred to Housing Unit 4, cell A-6 where he continued to be housed until June 15, 2017, when he was reassigned to cell A-18. ECF No. 19-2 at 2. Housing Unit 4 is the segregation unit and houses inmates on various levels of segregation status, including disciplinary segregation. ECF No. 19-3 ¶ 3. The windows in cells 1–14 and 25–38 of Housing Unit 4 are sealed due to safety and security concerns. *Id*. Those cells face the compound which allows segregation inmates to see the general population inmates during times of movement. *Id*. When the windows were unsealed, inmates in these cells acted disruptively during mass movement, including using vulgar and threatening language and passing along information regarding the flow of contraband to the general population. *Id*. This conduct created safety and security risks and as such, the windows were sealed. *Id*.

Inmates who had documented medical conditions that required them to have the ability to open their window were not housed in a cell with a sealed window. ECF No. 19-3 ¶ 5. Plaintiff did not have such a documented condition. ECF No. 19-5.

2

Although the windows are sealed, the cells are properly ventilated. ECF No. 19-3 ¶ 4. Moreover, the air circulation system at WCI meets Maryland compliance standards, and the cells have ventilation systems that circulate clean and filtered air four times per hour. *Id*. ¶¶ 4–5.

As to the events of May 30, 2017, Defendant explains that a cell extraction occurred on Housing Unit 4, A wing, on that date, due to inmates' refusing to comply with correctional officers' orders. ECF No. 19-2 at 6. Officers used pepper spray and a pepper ball gun to gain the compliance of the inmates. *Id*. Ultimately, seven inmates were extracted from their cells, one of whom was in possession of a homemade weapon. *Id.* Additionally, officers searched the cells on the wing, including Plaintiff's cell, and a homemade weapon was recovered in a cell near Plaintiff's. *Id.* All of the inmates involved in the use of force received medical attention and were permitted to shower before returning to their cells. *Id*. at 7. Plaintiff was not listed among the use of force reports as an inmate involved in the incident. *Id*. at 4–5.

During the time Plaintiff was housed on Housing Unit 4, the Warden's office received three letters from Plaintiff, none of which concerned the sealed windows or ventilation. ECF No. 19-4 ¶ 4. Additionally, while housed at WCI, Plaintiff filed two ARPs to the Warden. ECF No. 19-6 ¶ 3. Neither involved Plaintiff's window being sealed or Plaintiff experiencing any health problems due to the window being sealed. *Id*.

## II. Discussion

Defendant styles his motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the facts in the complaint or "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). However, Rule 12(d) requires courts to treat a motion to dismiss as a motion for summary judgment when

the court considers matter outside the pleadings. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Consistent with this rule, the nonmoving party must have some indication that the court will treat the motion to dismiss as a motion for summary judgment and "must be afforded a reasonable opportunity for discovery" if it is essential to the nonmoving party's ability to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

It is obvious when the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, Motion for Summary Judgment," as is the case here, that the Court may treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.2d 253, 260–61 (4th Cir.1998). To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature, *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Here, Plaintiff has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter. Under these circumstances, the Court will construe Defendant's motion as a Motion for Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

Defendant is entitled to judgment as a matter of law if no genuine dispute of material fact exists regarding Plaintiff's failure to exhaust his administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), plaintiffs must exhaust the administrative remedies available to them before bringing any action related to prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement applies to any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The purposes of exhaustion include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Prisoners must pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 523, 530 (D. Md. 2003); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative

claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines," "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 88 & 93 (2006) (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Exhaustion generally may not be excused unless an administrative procedure is not available. *See Ross* v. *Blake,* 136 S. Ct. 1850, 1858 (2016). An administrative remedy is unavailable "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). For example, an administrative procedure is rendered unavailable when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859–60.

The Administrative Remedy Procedure provides the process that Plaintiff needed to exhaust as an inmate in a Maryland prison seeking to bring an action related to prison conditions. A prisoner must first file an ARP with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs. (COMAR) § 12.07.01.04-05.A (2017). Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. COMAR § 12.07.01.05.C. If the appeal is denied, the prisoner must appeal within 30 days to the IGO. *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210;

COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may then seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210.

Here, the parties agree that Plaintiff did not pursue available administrative remedies prior to initiating this suit. Plaintiff failed to respond to Defendant's dispositive motion and does not dispute that he did not institute the ARP process regarding his claims. Plaintiff alleged in his unverified Complaint that he did not file an ARP regarding his claim because he mistakenly believed that such a grievance was not permissible. As discussed above, the ARP process begins for claims such as Plaintiff's by filing a Complaint at the institutional level. Plaintiff's mistaken belief to the contrary does not mean that administrative remedies were unavailable to him. Defendant has demonstrated that the Plaintiff has access to administrative remedies in the facility in which he is incarcerated. ECF No. 19-6 ¶ 3. In fact, Plaintiff has submitted other, unrelated ARPs in the past. *Id.* Plaintiff has not rebutted Defendant's evidence with any demonstration that officers were consistently unwilling or unable to provide relief to him, that the procedures were so opaque as to make them practically incapable of use, that prison administrators actively thwarted him from filing a grievance, or that he was in some other way prevented from availing himself of administrative remedies through no fault of his own. Because Plaintiff failed to complete each phase of the administrative process and does not claim that administrative remedies were unavailable to him, the Court will grant Defendant's motion to dismiss or for summary judgment for failure to exhaust administrative remedies.

**III.     Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is granted. A separate order will issue.

Dated: March 11, 2019                                         /s/
                                                              GEORGE J. HAZEL
                                                              United States District Judge